## MINNIE A. SMITH *vs.* PAUL BOYTON COMPANY.

Suffolk.   March 22, 23, 1900. — May 18, 1900.

Present: HOLMES, C. J., KNOWLTON, MORTON, BARKER, & LORING, JJ.

*Personal Injuries — Admissions in Statements required by Law — Admissions in Former Action.*

At the trial of an action against a foreign corporation for damages for personal injuries sustained by the plaintiff while participating in a sport at certain amusement grounds alleged to be operated and controlled by the defendant, a certified copy of an application by it for a license from the board of aldermen for the entertainments at such amusement grounds, a certified copy of the certificate of the defendant under St. 1884, c. 330, which referred to such amusement grounds as its

usual place of business, both made before the action was commenced, and a certified copy of a return of the defendant under St. 1891, c. 341, made after action brought, giving such amusement grounds as its post-office address, all purporting to be signed either by the defendant or by its officers, are competent in connection with the fact that the defendant's name was painted over the entrance to the grounds, and other evidence, for the purpose of showing that it operated and controlled such grounds.

If, at the trial of an action against the P. B. Company, a foreign corporation, for damages for personal injuries sustained by the plaintiff at certain amusement grounds alleged to be operated and controlled by the defendant, the defendant introduced testimony tending to show that it had never done business at the place in question, and that the place was in fact under the control and management of another foreign corporation, which used therewith the name "P. B. Company" without authority from the defendant solely because it was a popular name, evidence is admissible, in rebuttal, of the records of an earlier action against the same defendant to recover damages for personal injuries sustained by another person at the same grounds, which shows that by a petition signed "P. B. Company by H. Manager," the defendant sought a reduction of an attachment of its property, that by its answer it alleged that it was the proprietor of those grounds, and that judgment was entered against it.

At the trial of an action against the P. B. Company, a foreign corporation, for damages for personal injuries sustained by the plaintiff while participating in a sport at certain amusement grounds alleged to be operated and controlled by the defendant, evidence that the defendant's name was painted over the entrance, and that three written instruments made by the defendant as required by law purported to connect it with the business as proprietor, is to be weighed in connection with testimony that the sport in which the plaintiff was engaged when injured was one for which the G. and H. Company was alone responsible, as well as in connection with a contract between the defendant and the G. and H. Company, by which the latter was to construct and equip the whole enterprise, reimburse itself for advances from the receipts from the grounds, and thereafter own the enterprise jointly with the defendant; and requests for rulings that upon all the evidence the action could not be maintained, and that there was no evidence that the contract between the defendant and the G. and H. Company was fraudulent or colorable or otherwise than *bona fide,* were properly refused.

TORT, for personal injuries sustained by the plaintiff while participating in a sport at the amusement ground of the defendant. Writ dated September 1, 1897. Answer, a general denial. At the trial in the Superior Court, before *Sherman,* J., the jury returned a verdict for the plaintiff; and the defendant alleged exceptions. The material facts appear in the opinion and in a note by the reporter.

*R. W. Frost,* for the defendant.

*L. G. Blair,* for the plaintiff.

BARKER, J. The plaintiff visited an enclosure known as an "amusement ground," to which the payment of a fee gave her admission, an additional sum being payable for each sport in

which she there engaged.   She was in the exercise of due care,
and the cause of her injury was the negligence of the attendants
in charge of a sport in which she was participating when hurt.
The contention of the defendant corporation was that it was not
in charge or control of the appliance and had nothing to do with
its operation.

The defendant's name was painted over the entrance to the
grounds.   Aside from the evidence of this fact, all the other evi-
dence introduced by the plaintiff charging the defendant with
the management of the grounds was admitted, subject to the de-
fendant's exception.   Among the evidence thus admitted were
certified copies of three written instruments, two of which pur-
ported to be acts of the defendant corporation, and the other to
be the act of the president, treasurer, secretary, and a majority of
its directors.   The one last mentioned bore the earliest date, July
1, 1896, and was a certificate under St. 1884, c. 330, " Concern-
ing foreign corporations having a usual place of business in this
Commonwealth," purporting to state the facts concerning the
Paul Boyton Company, an Illinois corporation, required to be
stated by that statute.

The second instrument was dated July 15, 1897, and purported
to be an application of the Paul Boyton Company to the board
of aldermen of the city for a license.   The third bore date April
27, 1898, and purported to be the return of the Paul Boyton
Company, as an Illinois corporation, as of the first day of the pre-
ceding March, in compliance with the provisions of St. 1891, c.
341, " An Act concerning foreign corporations having a usual place
of business in this Commonwealth."   The " amusement grounds"
referred to in these instruments was the place where the plaintiff
was hurt.   The first referred to them as the usual place of busi-
ness of the corporation, and the place where notice and copies of
legal process should be addressed; the second asked for a license
for the entertainments there; and the third gave the same place
as the post office address of the company, and as its usual place
of business in the summer season.   The certified copies of these
instruments were admitted without other proof as to who signed
them, or as to the authority of the persons so signing, than ap-
peared from the copies themselves, except that a witness, Wal-
lace E. Hyde, called for the defendant, testified that the words

" Paul Boyton Company by Wallace E. Hyde Manager " were signed by him to the application for license.

1. The copies were admitted rightly.   The writ was dated September 1, 1897, and alleged that the defendant was a corporation duly established by law and having a usual place of business in the city of Boston.   The instruments were acts which were required by law to be performed by the defendant, if it was a foreign corporation and engaged in business at the place where the plaintiff received her injury.   There was no answer in abatement.   The fact that the words " Paul Boyton Company " were painted over the entrance to the grounds, admitted in evidence without objection, tended to show that the grounds were the place of business of a concern having the name alleged in the writ to be the corporate name of the defendant. The presumption that a certain name is borne and used by but one party made it right to infer that the instruments related to the defendant, and the fact that they purported to be made and filed in pursuance of law made it right to infer, from the copies themselves, that the instruments were genuine, and were acts of the defendant, relevant to the issues upon trial, and so admissible in evidence against it.

2. The exception to the question asked in cross-examination of a witness called by the defendant is not argued, and we treat it as waived.*

3. The defendant introduced the testimony of Wallace E. Hyde tending to show that it had never done business at the place in question, and that the place was in fact under the control and management of another foreign corporation which used therewith the name " Paul Boyton Company," without authority from the defendant, solely because it was a popular name.   Thereupon the plaintiff was allowed to put in evidence in rebuttal the record of an action in the Superior Court against the defendant in this case, to recover against it damages for a personal injury alleged to have been sustained by a visitor to the same grounds,

---

* The question was : " Don't you know, as matter of fact, that the Paul Boyton Company claims, Mr. Hyde, to control what I call the chutes ? "   The defendant excepted on the ground that the question of the control of the chutes two years after the accident was immaterial.   The question was allowed, and the witness answered in the negative.

in which action the defendant by a petition signed " Paul Boyton Company by Wallace E. Hyde Manager " had petitioned for a reduction of an attachment made therein of its property. The record also showed that the answer filed in the case and signed by the defendant's attorney alleged that it was the proprietor of the place of amusement, and that if the plaintiff therein was hurt it was through his own negligence, and also that judgment had been entered in the case for the plaintiff for damages and costs.

It is contended in support of the exception to the admission of this record that it should have been offered in chief, if at all; that it does not appear when the transactions which the record tended to prove took place; and that the answer was not competent, under the decision in *Dennie* v. *Williams*, 135 Mass. 28. But the order of evidence is within the discretion of the trial court, as also is the question whether matters of which evidence is offered are too remote in point of time. There was no request to withdraw that part of the record which disclosed the tenor of the answer signed by counsel from the consideration of the jury. The record was competent so far as it tended, aside from the statements of the answer, to prove that the defendant had acted concerning the place of amusement in a manner inconsistent with its contention at the trial, that it had no connection whatever with the grounds or the business there conducted. As no specific instructions were asked as to the answer, the question whether its statements were competent as admissions of the defendant is not now open, and we express no opinion upon it.

4. The request for an instruction that upon all the evidence the plaintiff could not maintain her action, was rightly refused. The keeping of the defendant's name over the entrance, and the statements of the three instruments which purported to connect it with the business as proprietor, were to be weighed with the testimony of the witness who testified that the special sport in which the plaintiff was engaged when hurt was one for which a third person was alone responsible, and that the management and control of the grounds belonged in fact to the Grace and Hyde Company, and with the contract between that company and the defendant, a copy of which was put in by the latter. The contract required the Grace and Hyde Company to construct, equip,

and complete the whole enterprise by May 1, 1896, and contemplated the reimbursement of the company for its advances by the receipts from the grounds within four months after they should be opened to the public, and provided for an association thereafter of the two corporations in the permanent conduct and management of the enterprise, so that every valuable thing pertaining to it should be owned and the use and income from it enjoyed jointly by the two.

If it was not a colorable contract it tended to prove such a connection of the defendant with the business as to make it responsible in an action of tort for negligence. In such an action the plaintiff could hold any one of several responsible parties. Besides this, the jury could believe or disbelieve the testimony that the particular sport in which the plaintiff was hurt was wholly owned and controlled by a stranger. Their finding against the defendant was justified by the evidence.

5. The exception to the refusal to give, at the close of the charge, the instruction that there was no evidence that the contract between the Grace and Hyde Company and the defendant was fraudulent or colorable or otherwise than *bona fide*, must be overruled. By the terms of the contract, the defendant, in whose name the enterprise was conducted, was its chief owner. The testimony that the defendant had no real share in the management or control, and that its name was used by the Grace and Hyde Company instead of its own merely because it was a more popular name, was enough to raise a question whether the contract was not colorable.

*Exceptions overruled.*