Brady, J.
The plaintiff, Hanover Insurance Company (“Hanover”) brings this action for negligence, breach of fiduciary duty, violation of G.L.c. 93A, §11 and declaratory judgment against defendant, Penn-America Insurance Company (“Penn-America”). Hanover, as assignee, is also now pursuing the crossclaim for negligence, breach of fiduciary duty and violation of G.L.c. 93A, §11 brought against Penn-America by Congress Management Company (“Congress”). Hanover alleges on behalf of itself and Congress that Penn-America negligently failed to settle a wrongful death and personal injury lawsuit brought against its former insured Congress, resulting in loss to both Hanover and Congress. Penn-America now moves for summary judgment on Counts I, II, and III of Hanover’s Second Amended Complaint and on Counts I, II, and III of Congress’ crossclaim, and, as to Count IV of the Second Amended Complaint, to declare that Penn-America owed no direct duty to Hanover. After hearing and for the reasons stated below, Penn-America’s motion for summary judgment is ALLOWED in part and DENIED in part.
BACKGROUND
In evaluating a motion for summary judgment, the court must rely on facts not in dispute as well as disputed facts viewed in the light most favorable to the nonmoving party. Beal v. Board of Selectmen of Hingham, 419 Mass. 535, 539 (1995). The material facts in this action, viewed in the light most favorable to Hanover, are set forth briefly below.
In 1991, Hanover issued a commercial general liability coverage insurance policy to Congress, a property management company, for a policy period of September 15,1991 to September 15, 1992. The policy provided coverage of $1,000,0000 per occurrence and $2,000,0000 in the aggregate. That same year Penn-America issued a commercial general liability coverage insurance policy to G&C Investment Corporation (“G&C") for a policy period of September 15, 1991 to September 15, 1992. The policy was issued to the care of Congress in its capacity as real estate manager for G&C, and had an aggregate limit of $1,000,000. Also in 1991, Federal Insurance Company (“Federal") issued a commercial excess umbrella liability coverage insurance policy to Congress.
On or about January 18, 1992, a fire occurred at a property in Gardner, Massachusetts owned by G&C and managed by Congress. The fire resulted in the death of one person and the injury of several other individuals. As a result of this death and injuries, a civil action was filed in Suffolk Superior Court naming both G&C and Congress as defendants, (Tammy Paradis, and others v. Congress Management Limited Partnership, and others, Suffolk Superior Court Civil Action No. 92-2053) (the “Paradis action”) [see 4 Mass. *444 L. Rptr. 11]. Pursuant to the terms of its policy, Penn-America retained counsel to represent both G&C and Congress in the Paradis action. At the time of the Paradis action, Hanover maintained that its policy was in excess to that of Penn-America. Hanover therefore did not retain separate counsel to represent its insured Congress, nor did it actively participate in settlement negotiations between the parties prior to trial. Hanover’s representatives did, however, actively monitor the defense of the Paradis action.
In March of 1992, the jury in the Paradis action returned a verdict against both G&C and Congress for compensatory damages in the aggregate amount of $1,367,000, plus interest, and for punitive damages in the amount of $600,000, plus interest. Penn-America, on behalf of G&C and Congress, filed an appeal of the judgment. In August of 1995, while that appeal was pending, Hanover commenced the present action against its insured Congress, Penn-America, Federal and four other insurers who had issued policies to Congress at the time of the fire.[2] Congress filed its answer containing the crossclaim now before the court in October of 1995.
On or after April 1996 the Paradis action was settled for a total of $2,500,000. Penn-America and Hanover each paid $1,000,000 of the total settlement. The remaining $500,000 was paid by a check drawn from the clients’ fund account of the law Arm representing Congress. At the request of Congress, and in consideration for the assignment of Congress’ rights against Penn-America and Hanover, Federal agreed to advance the sum of $500,000 to Congress in order to enable Congress to participate in the settlement of the Paradis action. The parties to the settlement of the Paradis action also entered into a stipulation. Included among the terms of this stipulation were the following paragraphs:
4. Participation in the settlement of Suffolk County Superior Court Civil action No. 92-02053, shall not preclude a party from seeking recovery from any other insurer for its contributions to the settlement, or for damages, or penalties, except as provided herein. All parties agree that no recovery will be sought at any time from Congress.
5. No claim presently pending in this action between the parties to this stipulation shall be considered waived or resolved as result of the settlement of Suffolk County Superior Court Civil Action No. 92- 02053, except as provided herein or otherwise resolved by stipulation by the parties.
6. It is expressly agreed that Congress waives any claim it may have against Hanover Insurance Company or Penn-America Insurance Company for recovery of attorneys fees and costs incurred in association with its defense of this action or Suffolk County Superior Court Civil Action No. 92-02053.
7. Each party agrees that no portion of any party’s contribution to the settlement shall be considered payment of punitive damages.
8. Each party waives its rights to make any claim against any other party in this action pertaining to liability for payment of punitive damages in Suffolk County Superior Civil Action No. 92-02053.
In March of 1998, Hanover paid Federal $500,000 in consideration for the further assignment to Hanover of the rights which Congress had previously assigned to Federal. In November of that year, Hanover in a motion for summary judgment sought a declaration from the court to the effect that it was the excess insurer of Congress and Penn-America the primary insurer for purposes of the property where the fire occurred. On March 31, 1999, Judge Butler issued a decision on Hanover’s summary judgment motion. In her decision, Judge Butler ruled that Hanover was a primary insurer for purposes of the Paradis action.
DISCUSSION
To prevail on summary judgment, the moving party must establish that there is no genuine issue of material fact on every element of a claim and that it is entitled to judgment on that claim as a matter of law. See generally Mass.R.Civ.P. 56(c); Highland Insurance Co. v. Aerovox, Inc., 424 Mass. 226, 232 (1997).
1. Hanover’s Claims Against Penn-America
In Counts I, II, and III of its Amended Complaint, Hanover as an excess insurer of Congress, asserts direct claims of negligence, breach of fiduciary duty and violation of G.L. 93A, §11 against Congress’ primary insurer Penn-America. Judge Butler has ruled, however, that by the terms of its policy with Congress, Hanover is a primary and not an excess insurer. By the law of this case as determined by Judge Butler, Hanover’s claims against Penn-America are therefore those of one concurrent primary insurer against the another. Penn-America contends that because Hanover is now adjudged to be a concurrent primary insurer, it owes no direct duties to Hanover, and thus, as a matter of law it is entitled to summary judgment on Counts I, II, III of the Amended Complaint. As to Count IV of the Amended Complaint, Penn-America also contends because it owes no direct duty to Hanover, Hanover is not entitled to a declaration by the court that Penn-America’s failure to settle the Paradis action “potentially exposed Hanover to a loss to which it would not otherwise have been exposed.”
As Penn-America correctly asserts in it motion for summary judgment, Massachusetts courts have never recognized the existence of a direct duty between concurrent primary insurers. The general rule is that concurrent primary insurers of the same insured are only permitted recovery under theories of equitable contribution, subrogation or assignment. Aetna Casualty & Surety Co. v. Chicago Insurance Co., 994 F.2d 1254, 1257 (7th Cir. 1998). This general rule was *445 recently relied upon by Judge Fecteau in Catholic Relief Insurance Co. of America v. Liquor Liability Joint Underwriting Association of America, Civil No. 930840 (Worcester Super. Ct. Dec. 22, 1997) (8 Mass. L. Rptr. 80]. In that case, the Catholic Relief Insurance Company (“Catholic Relief’), which acted as both a primary and excess insurer, sought to bring a direct cause of action for contribution against another primary insurer, the Liquor Liability Joint Underwriting Association (“LLJUA”). Judge Fecteau ruled that there is no independent duty between concurrent insurers and, therefore, Catholic Relief could not bring a direct cause of action against the LLJUA. Id. at 21.
It is also important to note that while the Supreme Judicial Court has never spoken expressly on the duties owed by one primary insurer to another, it has discussed the nature and scope of the duties owed by a primary to an excess insurer. See Hartford Casualty Insurance Company v. New Hampshire Insurance Company, 417 Mass. 115 (1994). In Hartford, the Supreme Judicial Court affirmed a trial judge’s refusal to instruct a jury that a primary insurer owed a direct duty of care to the excess insurer. Hartford, 417 Mass. at 124. The Supreme Judicial Court noted that the general rule is that an excess insurer has a claim based on equitable subrogation but no right to a direct action against the primary insurer. Id. at n.7. The Hartford Court, also stated that it need not decide whether a primary carrier could ever owe a direct duty to an excess carrier, but explained that if such a duly did exist, it would be no greater than that owed by a primary insurer to its insured. Id.
Both the direct and analogous case law in Massachusetts supports Penn-America’s contention that it owes no direct duties to its concurrent primary insurer, Hanover. In the absence of any direct duty on the part of Penn-America, Hanover cannot, as a matter of law, maintain its claims against Penn-America for negligence, breach of fiduciaiy duly or violation of G.L.c. 93A. Further, as no duty existed on the part of Penn-America, Hanover is not entitled to a declaration by the court that Penn-America’s failure to settle the Paradis action prior to trial potentially exposed Hanover “to a loss to which it would not otherwise have been exposed." Hanover’s claims against Penn-America, if any, only arise as a subrogee and/or assignee of Congress.[3]
2. Congress’ Claims Against Penn-America
Congress asserts a three-count crossclaim against Penn-America for negligence, breach of fiduciaiy duty and violation of G.L.c. 93A, §11. The assignment of Congress’ rights against Penn-America were validly obtained by Federal in consideration of its advancement to Congress of $500,000 to pay Congress’ share of the Paradis action settlement. These rights were then validly assigned by Federal to Hanover in consideration of the payment of $500,000, and are now being properly asserted by Hanover.
A. Congress’s Breach of Fiduciaiy Duty Claim
Count II of the crossclaim alleges that Penn-America, as the provider of general liability insurance, was in a fiduciary relationship with its insured Congress, and breached its fiduciaiy duties to Congress by failing to settle the Paradis action. Penn-America contends that it is entitled to summary judgment on Count II of the crossclaim because Massachusetts does not recognize the existence of a fiduciaiy relationship between an insurer and its insured. In response, Hanover, citing the Hartford decision, contends that the Supreme Judicial Court has never explicitly rejected the existence of fiduciary relationship between an insurer and its insured and argues that in fact the Hartford Court, implicitly recognized the existence of a quasi-fiduciaiy relationship between an insurer and its insured.
The court rejects Hanover’s suggestion that the fact that the Supreme Judicial Court has not explicitly rejected the existence of a fiduciaiy relationship between insurer and insured constitutes a recognition that such a relationship may exist. The court also rejects Hanover’s contention that the Hartford Court’s citing of a Colorado decision[4] implicitly recognized that such a relationship exists under Massachusetts law. In Hartford, the Supreme Judicial Court cited the Colorado decision, along with an Oregon decision,[5] not to support a holding that such a quasi-fiduciary relationship might exist, but rather to support an assertion that the national trend of the law was to impose a negligence standard in claims involving an insurer’s culpability for breach of its duty to an insured. See Hartford, 417 Mass. at 120. The Colorado decision was cited as part of a specific discussion by the Supreme Judicial Court concerning whether to adopt a negligence standard with respect to primary insurers’ settlements of third party claims, and not as to whether a fiduciary relationship exists between insurer and insured. Massachusetts has never explicitly or implicitly recognized the existence of a fiduciary relationship between an insurer and its insured. Accordingly, Penn-America is entitled to summary judgment on Count II of Congress’s crossclaim.
B. Congress’s Negligence and 93A Claims
The damages Congress asserts as to the negligence and c. 93A counts of its crossclaim includes only the $600,000 it was assessed for punitive damages in the Paradis action plus the costs incurred defending the present action brought by Hanover. Penn-America contends that it is entitled to summary judgment as to these two counts of the crossclaim as Hanover will be unable to prove damages, an essential element of both counts, because the factual bases for these alleged damages no longer exists as a result of the stipulation entered into by all the parties upon settlement of the Paradis action. Penn-America maintains that by joining in the stipulation Congress expressly waived the right to make any claims either pertaining *446 to liability for payment of punitive damages or the recovery of attorney fees and costs incurred in defense of the Paradis action. In opposition, Hanover argues that the stipulation entered into at the time of the Paradis action settlement only created “a legal fiction” that punitive damages were not paid by any of the parties to the settlement. In fact, Hanover argues punitive damages were very much a part of the $2,5000,000 paid in settlement of which Congress paid $500,000.
Even, if the court assumes arguendo that the stipulation only created a “legal fiction" and that punitive damages were actually paid as part of the settlement, the fact remains that Congress expressly waived its rights to bring a claim against Penn-America for liability resulting from the payment of punitive damages. Given Congress’ express waiver of rights, Hanover’s contention that Congress can still claim damages from Penn-America on the basis of the punitive damages actually paid in the Paradis settlement is without merit.
Hanover also contends that the claim for relief set forth by Congress in its crossclaim is broad in scope and not limited to specific allegations. The key to Congress’ claim, Hanover asserts, is that neither Congress nor its others insurers would have been exposed to any liability had Penn-America conducted itself appropriately. Regardless of how it is viewed, Hanover argues, Congress paid $500,000 in settlement funds as a result of Penn-America’s conduct in the Paradis action. Hanover further asserts that Congress’ original crossclaim specifically identified its liability for punitive damages in the Paradis action as a component of its claim because such damages represented a potential uninsured liability at the time the crossclaim was filed in October 1995. Hanover, therefore, asks that if the court finds that the pending crossclaim against Penn-America does not fall within the broad scope of the relief sought, Hanover, as assignee of Congress, be given leave under Mass.R.Civ.P. 15 to amend the pleading.
Mass.R.Civ.P. 15(d) allows a court “upon reasonable notice and upon such terms as are just” to permit a party to a civil action to “serve a supplemental pleading setting forth transaction or occurrences or events which have happened since the date of the pleading sought to be supplemented.” A court may grant such permission even though the original pleading is defective in its statement of a claim for relief or defense." If a court deems it advisable it may also order that the adverse party respond to the supplemental pleading.
Penn-America contends that Hanover should not be granted leave to supplement Congress’ original pleading at this late date in the proceedings. As a general rule, Massachusetts allows liberal amendment of pleadings. Provincetown Chamber of Commerce Inc. v. John T. Grace, 14 Mass.App.Ct. 903, 905 (1982). A motion to amend should be allowed unless there is some good reason to deny it. Castellucci v. United States Fidelity & Guarantee Co., 372 Mass. 288, 289 (1977). Reasons which might justify the denial of a motion to amend include “undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party by virtue of allowance of the amendment [and] futility of amendment. . ." Id. at 290.
Penn-America asserts that Congress and its successive assignees Federal and Hanover have had since April of 1996 when the Paradis action was settled to amend the original complaint and crossclaim to reflect the impact of that settlement on any claim for relief. Penn-America argues that Hanover’s undue delay in amending the original complaint and crossclaim justifies denial of its request to amend. While undue delay may justify a denial of a motion to amend a complaint, delay alone is usually insufficient unless accompanied by some other factor such as imminence of trial or a plaintiffs attempt to introduce a totally new theory of liability. Goulet v. Whitin Machine Works, Inc., 399 Mass. 547, 552 (1987). Even if the court were to conclude that Hanover has engaged in undue delay in requesting leave of the court to amend the original complaint and crossclaim, no other factors are present which would justify denial of this request. A trial on Congress’ cross-claim is not imminent, nor is Hanover seeking to introduce a new theory of liability. Delay by Hanover does not justify denial of this request.
Hanover seeks to supplement the crossclaim filed by Congress prior to the settlement of the Paradis action and the entering into of the stipulation concerning that settlement. “There is nothing uncommon about the allowance of amendments to show facts which have intervened since commencement of the suit.” George Altman Inc. v. Vogue Internationale, Inc. 366 Mass. 176, 181 (1974). The settlement of the Paradis action and the entering into the stipulation are “transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented.” Mass.R.Civ.P. 15(d). As a result of the settlement of the Paradis action and the entering into of the stipulation the crossclaim filed by Congress is “defective in its statement of a claim for relief.” Id. The court therefore grants Hanover leave to supplement the original pleading filed by Congress. Given the leave granted to Hanover to supplement the original complaint and crossclaim filed by Congress, the court cannot at this time find that no genuine issue of material fact exists as to Counts I and III of that crossclaim. Consequently, Penn-America’s motion for summary judgment as to Counts I and III of the crossclaim is denied.
ORDER
For the reasons stated above, the defendant Penn-America’s motion for summary judgment as to Counts *447 I, II, HI and IV of the plaintiffs Second Amended Complaint and Count II of the crossclaim brought by the plaintiff as the assignee of the Congress Management Company is ALLOWED. The defendant’s motion summary judgment as to Counts I and III of the crossclaim brought by the plaintiff as assignee of the Congress Management Company is DENIED.
It is further ordered that the plaintiff shall have twenty-one days in which to file with the court an amended crossclaim by Congress Management Company. The defendant may have fourteen days in which to file an answer to the amended crossclaim.

As noted above Congress, Federal and the other four insurers are no longer defendants in this action.

The court notes that Hanover concedes as much in. its Opposition to Penn-America’s Motion for Summaiy Judgment. In its Opposition, Hanover acknowledges that Judge Butler’s ruling essentially extinguished any of the independent claims it was asserting as an excess insurer, but did not extinguish its claims as a subrogee or assignee of either Congress or Federal.

Farmers Group Inc. v. Trimble, 691 P.2d 1138, 1142 (Cob. 1984).

Maine Bonding & Casualty Co. v. Centennial Ins. Co., 298 Or. 514, 518, 519 (1985).